**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES CRUMP,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **METASOURCE ACQUISITIONS, LLC, METASOURCE EMPLOYEE SERVICES, LLC, METASOURCE, LLC, METASOURCE, LLC doing business as METASOURCE AND DAVID BRODECKI,** | **NO. 18-3313** |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff James Crump brings claims of discrimination under federal and state law against Defendants MetaSource Acquisitions, LLC, MetaSource Employee Services, LLC, MetaSource, LLC, and MetaSource, LLC d/b/a MetaSource (collectively, "MetaSource"), and Defendant David Brodecki. MetaSource is Plaintiff's former employer, and Brodecki his former supervisor. In separate motions, Defendants each move to compel arbitration pursuant to an agreement signed by Plaintiff near the outset of his employment. For the reasons set forth below, the motions shall be denied.

### I.    BACKGROUND

On February 20, 2017, Plaintiff began working for MetaSource. On March 2, 2017, he received several text messages from Brodecki, soliciting Plaintiff to come to Brodecki's home over lunch. Plaintiff agreed, believing that Brodecki wanted to discuss work related matters. However, when Plaintiff arrived, Brodecki began making sexual advances and ultimately performed unwanted oral sex on Plaintiff. Plaintiff forced Brodecki to stop and left.

Afterwards, attempting to grapple with the situation, Plaintiff alleges that he asked

another supervisor for a copy of the employee handbook, but the supervisor was not able to provide Plaintiff with a copy. Brodecki continued to contact Plaintiff, asking him to meet outside the office. On March 27, 2017, Plaintiff alleges that he was constructively terminated.

Plaintiff subsequently brought this suit, which Defendants move to dismiss and compel arbitration. In support of their motion, Defendants point to the employee handbook, which Plaintiff signed near the outset of his employment. In addition to setting forth various office policies, the final page of the handbook contains an "Acknowledgement and Agreement," which Plaintiff signed.[1] The page is numbered 39, in continuation from the pagination in the remaining portions of the handbook. At the top of the page, the agreement provides that the "Employee Handbook . . . sets forth the terms and conditions of . . . employment," and that MetaSource may terminate the employee "at any time for any reason, with or without cause or notice." In the next paragraph, the agreement states that,

> [E]xcept for the policy of at-will employment, the Company reserves the right to revise, delete, and add to the provisions of this Employee Handbook. All such revisions, deletions, or additions must be in writing and must be signed by the President of the Company. . . . [E]xcept for the policy of at-will employment, terms and conditions of employment with the Company may be modified at the sole discretion of the Company with or without cause or notice at any time.

Under the bolded headline "**MetaSource Alternative Dispute Resolution Program**," the final paragraph of the page provides that,

> [I]n the event employment disputes arise between [the signatory] and the Company, [the signatory] will be bound by the MetaSource Alternative Dispute Resolution Program which provides for final and binding arbitration for disputes relating to termination of employment, unlawful discrimination, and alleged sexual harassment or other unlawful harassment, as defined in the MetaSource Alternative Dispute Resolution Program.

Below this paragraph, there is a space for the employee to sign and date. On Friday, February

---

[1] The full page is attached to this opinion as an addendum.

24, 2017, Plaintiff signed a copy of this agreement.  Plaintiff alleges that he began working on Monday, February 20, 2017—thus, Plaintiff signed the agreement after about a week of employment.  At some point, Brodecki signed a copy as well.

The terms of the Alternative Dispute Resolution Program are set out in a separate document which provides that the American Arbitration Association would administer any arbitration. There are no signatures on this document.

## II.     PROCEDURAL POSTURE AND APPLICABLE STANDARDS

A motion to compel arbitration may be evaluated under either the motion to dismiss standard of Rule 12(b)(6) or the summary judgment standard of Rule 56.  *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013).  If it is "apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard." *Id*.  "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." *Id*.  "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id*.

In this case, Defendants initially filed a motion to dismiss and compel arbitration in October of 2018.  Given that it was not clear from the face of the complaint or the documents relied upon in the complaint whether the suit was subject to arbitration, in accordance with *Guidotti*, the parties were given an opportunity to engage in limited discovery on the question of

arbitrability. That discovery has now been had and Defendants have renewed their motions to compel arbitration, which shall be evaluated under a summary judgment standard. *Id.*

Under the applicable summary judgment standard, "a motion to compel arbitration should only be granted if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017).

## III. DISCUSSION

"[T]he Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.*, establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). However, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009). "[I]n deciding whether a party may be compelled to arbitrate under the FAA, [courts] first consider (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted). Here, Plaintiff does not contest that his claims fall within the scope of the arbitration clause. Thus, the only question at issue is whether there is a valid agreement to arbitrate.

"Because arbitration is a matter of contract," "[t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotation marks omitted). In Pennsylvania,[2] "contract formation requires: (1) a mutual

---

[2] The parties agree that Pennsylvania law applies.

manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Id.* "Consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

Plaintiff asserts that MetaSource's reservation of the right to unilaterally change the terms and conditions of his employment renders the arbitration agreement illusory. In effect, Plaintiff argues that MetaSource's reservation of the right to modify the arbitration agreement means that MetaSource's promise to arbitrate cannot constitute sufficient consideration in return for Plaintiff's promise to arbitrate. In response, Defendants assert that its promise to arbitrate is not illusory, and that, even if it is, MetaSource's employment of Plaintiff constitutes sufficient consideration.

### A. Whether MetaSource's Promise to Arbitrate is Illusory

Under Pennsylvania law, "[i]f the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable. The promisor has committed him/herself to nothing." *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, 175 A.3d 273, 278 (Pa. 2017) (Dougherty, J., concurring) (quoting *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa. Super. 1992)); *see also Maint. Specialties, Inc. v. Gottus*, 314 A.2d 279, 283 n.6 (Pa. 1974) (Jones, C.J., concurring) (finding a promise to be illusory where the company's obligation was voidable if, in the sole discretion of the company, an employee neglected or took action that was detrimental to the company's interests).

As a general matter, "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. Am. Golf Corp.*,

299 F.3d 1216, 1219 (10th Cir. 2002) (collecting cases).  Although their analysis is governed by state law, in evaluating arbitration provisions that permit the employer to modify its arbitration commitment, courts have reached consistent conclusions: generally, where an employer is "free to exercise or not exercise the arbitration clause at its whim," its "performance is entirely optional," and thus the arbitration agreement will be held to be illusory.  *Druco Restaurants, Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 783 (7th Cir. 2014).  "[T]he fundamental concern driving this line of case law is the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it."  *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012); *see also Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000); *cf. Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (finding similar provision unconscionable).

In *Blair v. Scott Specialty Gases*, the Third Circuit applied Pennsylvania law and articulated a similar rule.  283 F.3d at 604.  There, an employee handbook included an arbitration provision, where the employee acknowledged and agreed to submit disputes to arbitration.  The employer also reserved the right to modify the terms of the handbook through written amendments.  The handbook further provided that if the employer "makes any material changes, it will give [the employee] a copy of them, and by remaining employed by [the employer] thereafter [the employee] will be deemed to have accepted these changes."  *Id.*  The Court of Appeals found that the employer did not retain "unfettered discretion" to modify the handbook, in light of the notice and acceptance provisions.  Accordingly, the court found that the arbitration agreement was not illusory because the employer's "promise to submit to arbitration serves as consideration."  *Id.* at 604 n.3.

Within this circuit, district courts applying *Blair* have held that agreements permitting the employer to make changes to an arbitration provision are not illusory where (1) the employer may only make modifications in writing; (2) the employer must provide notice to the employees of any modifications; (3) the employee is permitted to accept the modifications by continuing employment; and (4) the modifications are effective only prospectively. *See, e.g.*, *Gutman v. Baldwin Corp.*, 2002 WL 32107938, at *4 (E.D. Pa. 2002); *Bourgeois v. Nordstrom, Inc.*, 2012 WL 42917, at *6 (D.N.J. 2012). By contrast, where an employer reserves the right to make modifications without such qualifications, the agreement has been deemed illusory. *See Raymours Furniture Co. v. Rossi*, 2014 WL 36609, at *9 (D.N.J. 2014).

Turning to the instant matter, application of the above principles demonstrates that the arbitration agreement is illusory. Though there is some squabbling about the effect of the particulars of the arbitration program being set out in a separate document, MetaSource agrees that the arbitration provision on the final page of the employee handbook contains MetaSource's promise to arbitrate. That page also provides that MetaSource may only makes changes to the employee handbook in writing—a fact which cuts in favor of finding the agreement not to be illusory. The remaining factors, however, cut in the opposite direction. The agreement page specifically states that MetaSource need not give "notice at any time" of any modifications. Nor is there any term providing for the employee's acceptance of modifications. Nor is there any statement limiting the effect of any modifications to future incidents. Thus, the agreement permits MetaSource to change any of its obligations (other than at-will employment) at any time, simply by putting its desired changes in writing—without so much as telling its employees of these changes. In other words, MetaSource has the "unfettered discretion," to modify its arbitration obligations, *Blair*, 283 F.3d at 604, and has "committed [it]self to nothing," *SCF*

*Consulting*, 175 A.3d at 278 (Dougherty, J., concurring) (quoting *Geisinger*, 606 A.2d at 512).

Because Metasource's obligation to arbitrate "is entirely optional," its promise to arbitrate is

"illusory and, therefore, lacking consideration and unenforceable." *SCF Consulting*, 175 A.3d at

278 (Dougherty, J., concurring) (quoting *Geisinger*, 606 A.2d at 512).

Defendants do not quarrel with this analysis, but instead propose an altogether different

interpretation of the contract that would render this analysis unnecessary. Specifically, they

assert that the arbitration provision is separate and distinct from the remainder of the employee

handbook, and thus MetaSource has not reserved the right to modify its arbitration obligations.

Effectively, they claim that there are two entirely separate agreements: first, the employee

handbook, which MetaSource may modify at any time without notice, and, second, the

arbitration provision, which it may not. MetaSource notes that the arbitration provision is in a

separate paragraph, under its own heading, and includes the language that the signatory "*also*"

acknowledges and agrees to arbitration. Defendants argue that this visual and linguistic

separation means that MetaSource's ability to modify the employee handbook, as provided for at

the top of the page, simply does not extend to the arbitration agreement at the bottom of the page.

This argument is unavailing. The arbitration provision appears on the last page of the

employee handbook, which is numbered page 39 as part of the continuous pagination throughout

the handbook. The very top of page 39 contains the words "**ACKNOWLEDGEMENT AND

AGREEMENT**," which are bolded, in capital letters, centered on the page, and set above the

rest of the text. There is no other heading which could be read to distinguish between portions of

the page: the heading applies to the full page, including the arbitration agreement. The text near

the top of the page provides for Metasource's right to "revise, delete, and add to the provisions of

this Employee Handbook" and "the terms and conditions of employment." The arbitration

provision is the final paragraph on this same page.[3]  Because the arbitration provision is located within the handbook, and MetaSource's ability to modify terms extends to all "provisions of this Employee Handbook," MetaSource has reserved the right to "revise, delete, and add to" the arbitration provision.  *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015) ("[T]he entire contract should be read as a whole.").  This conclusion is further buttressed by the fact that the Plaintiff signed this page only once: directly beneath the arbitration provision.  Thus MetaSource's attempt to divorce the arbitration agreement from the other portions of the employee handbook fails.

Accordingly, MetaSource's promise to arbitrate is illusory, and does not serve as consideration.

### B.  Whether Continuing Employment Serves as Alternative Consideration

Defendants argue that, regardless of whether the arbitration agreement is illusory, MetaSource supplied sufficient consideration for Plaintiff's promise to arbitrate by continuing to employ Plaintiff.

The majority of the courts to have found an arbitration provision to be illusory have declined to enforce the agreement—without considering whether alternative consideration may suffice.  *See, e.g.*, *Druco Restaurants*, 765 F.3d at 784; *Carey*, 669 F.3d at 209; *Dumais*, 299 F.3d at 1220.  However, several courts have considered whether continued employment may serve as alternative consideration.  The basic idea is that,

> [An employer's] offering initial or continued employment in consideration for the employee's agreement to abide by the arbitration agreement . . . is not an empty or illusory promise but an offer of continued employment, a benefit to the [employee], conditioned on a promise that the [employee] would agree to the

---

[3] To the extent that the Defendants argue that the use of the words "I also acknowledge …" at the beginning of the paragraph regarding arbitrations somehow sets it off from the rest of the page, the argument is unavailing because of the five paragraphs on the page four begin with either the words "This is to acknowledge …" (the first paragraph), or the words "The second, third and fifth (concerning arbitrations).

> arbitration agreement. The [employee may] accept[] that offer by signing the
> arbitration agreement and by working thereafter for [the employer]. Thus,
> [employer]'s agreement to employ the [employee] provides sufficient
> consideration for the [employee's] agreement to arbitrate the[] disputes with [the
> employer].

*Martinez v. Utilimap Corp.*, 2015 WL 3932151, at *6 (S.D. Ill. 2015) (applying Illinois law).

Some jurisdictions have adopted this view and held that, regardless of whether an employer's

arbitration agreement is illusory, "continuation of the employee's employment was sufficient

consideration" to uphold an arbitration agreement. *See Britto v. Prospect Chartercare SJHSRI,*

*LLC*, 909 F.3d 506, 513 (1st Cir. 2018) (applying Rhode Island law) (internal punctuation

omitted).

    Other courts have rejected this view. In *Cheek v. United Healthcare of Mid-Atlantic,*

*Inc.*, the Maryland Court of Appeals held that an arbitration agreement lacked consideration

because employer's "promise to arbitrate was illusory," and employment "cannot serve as

consideration for the arbitration agreement." 835 A.2d 656, 669 (Md. 2003). The Maryland

court reasoned that the contrary outcome would "preclude[] [courts] from ever finding an

arbitration agreement invalid for lack of consideration when performance of a contract has

already occurred, no matter how illusory the arbitration agreement was." *Id.* at 669. Similarly,

in *Clark v. UnitedHealth Grp., Inc.*, a federal court in New Mexico reasoned that, at least where

an employee is at-will, employment cannot serve as consideration in exchange for an employee's

agreement to arbitrate. 2018 WL 2932735, at *6 (D.N.M. 2018), *report and recommendation*

*adopted*, 2018 WL 3539817 (D.N.M. 2018). The court explained that "offers of new and

continued at-will employment fail to place constraints on an offering employer's actions, leaving

the employers' decisions to commence or continue employment entirely discretionary." *Id.*

Accordingly, the employer had not provided any new consideration in support of the arbitration

agreement.

The Pennsylvania Supreme Court is yet to resolve this precise issue, and thus this Court must predict how the Pennsylvania Supreme Court would rule on this issue.[4]  *See Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91-92 (3d Cir. 2008).   A recent decision from the Pennsylvania Supreme Court does provide some guidance, in that it dealt with the question of whether an employer's continued employment serves as adequate consideration to support a non-competition clause.  *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1275 (Pa. 2015).  The Pennsylvania Supreme Court held that continued employment alone did not suffice.  Rather the employer must provide "new" consideration:

> When a non-competition clause is required after an employee has commenced his or her employment, it is enforceable only if the employee receives 'new' and valuable consideration—that is, some corresponding benefit or a favorable change in employment status.  Sufficient new and valuable consideration has been found by our courts to include, inter alia, a promotion, a change from part-time to full-time employment, or even a change to a compensation package of bonuses, insurance benefits, and severance benefit. . . .  More specifically, the mere continuation of the employment relationship at the time of entering into the restrictive covenant is insufficient to serve as consideration for the new covenant, despite it being an at-will relationship terminable by either party.

*Id.*  While non-competition clauses—unlike arbitration provisions—are disfavored under Pennsylvania law, *see id.* at 1274, the Pennsylvania Supreme Court reached this conclusion by applying traditional principles of contract law, *see id.* at 1274-75 (deriving the above conclusions from foundational contracts tenets).  Accordingly, *Socko* indicates that, where employers seek to impose conditions on their employees, continued employment does not demonstrate that the necessary "exchange of consideration" has taken place.  *Id.* at 1275.  Rather, "'new' and valuable

---

[4] It is true that in *Blair*, the Third Circuit suggested that, where the terms of the arbitration agreement itself are illusory, continued employment may serve as alternative consideration sufficient to uphold an arbitration agreement. *Blair*, 283 F.3d at 604 n.3.  However, the Third Circuit explicitly declined the resolve the issue, finding it to be unnecessary to the disposition of the case. *Id.*  Accordingly, *Blair* does not control.

consideration" from the employer is required. *Id.* While *Socko*'s focus on the non-competition context means that it does not definitively resolve the case at bar, the decision nonetheless militates strongly against finding MetaSource's continued employment of Plaintiff to be sufficient consideration here.

*Socko* is consonant with another line of Pennsylvania cases where an employee attempts to enforce the terms of an employee handbook against the employer. *See, e.g.*, *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 941 (Pa. Super. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014); *Romeo v. Precision Distribution Consulting, Inc.*, 2013 WL 11255502, at *7-*8 (Pa. Super. 2013). These cases shed light here because they analyze similar situations where an employer distributes a handbook, which the employee signs sometime thereafter. *See, e.g.*, *Braun*, 24 A.3d at 939 (handbooks were distributed at orientation).[5] However, in these cases—unlike this one—the employee is generally seeking to obtain some type of benefit provided for in the handbook that the employer has refused to honor. As in *Socko*, courts have found the handbook to be enforceable contracts only if the handbook has created a new obligation on the part of the employer. Most commonly, this new obligation is to "supplant the at-will rule" of employment.[6] *See, e.g.*, *Braun*, 24 A.3d at 941; *Romeo*, 2013 WL 11255502, at *7-*8. In other instances, the employer created an obligation that is "incidental or collateral to at-will employment," by "offer[ing] various rewards to employees who achieve a particular result or work a certain amount of overtime." *Braun*, 24 A.3d at 941. Put simply, in order for the handbook to create a binding contract, the employer must agree to do something "new." *Socko*, 126 A.3d at 1275. If

---

[5] Some courts have also analyzed situations where an employer creates a handbook far after the employee began working. *See, e.g.*, *Baron v. Quad Three Grp., Inc.*, 2013 WL 3822134, at *6 (Pa. Super. 2013) (handbook distributed many years after employment began).

[6] At-will employment is the default employment status under Pennsylvania law. *See Socko*, 126 A.3d at 1273.

the employer offers such new conditions, then the employee can "accept[] the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required." *Braun*, 24 A.3d at 940. Accordingly, these cases reflect *Socko*'s mandate that an employment agreement made during the course of employment requires some "new" consideration from the employer in order to create a valid contract.

Extrapolating from *Socko* and the employee handbook cases leads to the conclusion that the arbitration agreement here was not supported by sufficient consideration in the form of continued employment. Plaintiff had already been working at MetaSource for about a week when he signed the employee handbook with the arbitration provision (he began work on a Monday and signed the handbook that Friday). Thus MetaSource had already offered, and Plaintiff had already accepted, an at-will employment relationship. The employee handbook, with the arbitration provision, did not impose any new obligations on MetaSource—it provided that MetaSource could change anything in the employee handbook, and thus any term or condition of Plaintiff's employment, other than the at-will nature of Plaintiff's employment. Accordingly, MetaSource did not provide any "new" consideration to Plaintiff. In the absence of such "'new' and valuable consideration," the fact that MetaSource continued to employ Plaintiff at-will is insufficient consideration to support Plaintiff's agreement to arbitrate. *Socko*, 126 A.3d at 1275.

For the reasons given, the arbitration agreement is not supported by adequate consideration, and is thus unenforceable. Accordingly, Defendants motions to compel arbitration shall be denied.[7]

---

[7] Plaintiff asserts that his claims against Brodecki are not subject to the arbitration agreement for the separate reason that there is no privity of contract between Plaintiff and Brodecki. Because the arbitration agreement is not enforceable, the Court does not reach this issue.

An appropriate order follows.

**March 19, 2019**                    **BY THE COURT:**

                                      **/S/WENDY BEETLESTONE, J.**

                                      _____

                                      **WENDY BEETLESTONE, J.**

# ADDENDUM

ACKNOWLEDGMENT AND AGREEMENT

This is to acknowledge that I have received a copy of the MetaSource ("MetaSource" or "the Company") Employee Handbook and understand that it sets forth the terms and conditions of my employment as well as the duties, responsibilities, and obligations of employment with MetaSource. I understand and agree that it is my responsibility to read the Employee Handbook and to abide by the rules, policies, and standards set forth in the Employee Handbook.

I also acknowledge that my employment with MetaSource is not for a specified period of time and can be terminated at any time for any reason, with or without cause or notice, by me or by the Company. I acknowledge that no oral or written statements or representations regarding my employment can alter the foregoing. I also acknowledge that no Manager or Employee has the authority to enter into an employment agreement--express or implied--providing for employment other than at will.

I also acknowledge that, except for the policy of at-will employment, the Company reserves the right to revise, delete, and add to the provisions of this Employee Handbook. All such revisions, deletions, or additions must be in writing and must be signed by the President of the Company. No oral statements or representations can change the provisions of this Employee Handbook. I also acknowledge that, except for the policy of at-will employment, terms and conditions of employment with the Company may be modified at the sole discretion of the Company with or without cause or notice at any time. No implied contract concerning any employment-related decision, term of employment, or condition of employment can be established by any other statement, conduct, policy, or practice.

I understand that the foregoing agreement concerning my at-will employment status and the Company's right to determine and modify the terms and conditions of employment is the sole and entire agreement between me and MetaSource concerning the duration of my employment, the circumstances under which my employment may be terminated, and the circumstances under which the terms and conditions of my employment may change. I further understand that this agreement supersedes all prior agreements, understandings, and representations concerning my employment with MetaSource.

## MetaSource Alternative Dispute Resolution Program

I also acknowledge and agree that in the event employment disputes arise between me and the Company, I will be bound by the MetaSource Alternative Dispute Resolution Program which provides for final and binding arbitration for disputes relating to termination of employment, unlawful discrimination, and alleged sexual harassment or other unlawful harassment, as defined in the MetaSource Alternative Dispute Resolution Program.

02/24/2017
_____
Date

A0GY58d086a224f4
_____
Employee Signature

CRUMP, JAMES
_____
Employee Name [printed]

4845-1574-8657:1